May it please the court, my name is Sean Paisley. I represent plaintiff Lillibeth Navarro and Miss Wheelchair California pageant as well as a certified class. I'd like to reserve a little bit of time maybe around five minutes but I'll keep an eye on the clock here. Plaintiffs are appealing from the district court's dismissal of their lawsuit which seeks to remedy on behalf of tours inaccessible to people with mobility disabilities. There are two reasons we're here. The first, and I'll address them briefly before dealing with them in more detail, the first is that the district court dismissed this lawsuit sua sponte based on an article 3 standing argument that was not raised by Starline and did so without giving plaintiffs notice or the opportunity to be heard. And that alone is reversible error. The second reason we're here is that the district court decided that plaintiff's ADA challenge to a number of accessibility violations on board the buses were not properly part of this lawsuit and would have to be addressed anew in a second lawsuit. But plaintiffs had standing to challenge those violations under Chapman. Starline had noticed that those violations were part of this lawsuit and it was error to require that those violations be addressed piecemeal in a second lawsuit which is exactly what the Ninth Circuit said should not happen in Duran. I want to address the first issue first which is the undisputed facts concluded that plaintiffs in the class lacked article 3 standing. A court can only grant summary judgment sua sponte if it gives the non-moving party notice and an opportunity to respond under Rule 56F and under this court's decision in Norse. It doesn't do that, it's powerless to grant summary judgment. And so that is reversible error. Starline's response to this is it wasn't sua sponte. We actually raised this argument on summary judgment but the clearest indication that that isn't the case is that Starline moved for summary judgment on an article 3 standing argument and their motion was denied. What Starline moved in relation to was plaintiff's past injury in fact and whether plaintiffs had a sincere intent going forward to return and use Starline services. The court rejected those arguments. The argument that the district court relied on was a different article 3 standing argument about Starline's policies and whether Starline had some policy that could be remediated through prospective relief. That was something that was never raised and the plaintiffs didn't have the opportunity to develop a record to rebut. And so that means it's reversible error. Let's assume the district court explained the basis for it and you've observed that you should have been given an opportunity to speak to that. What would you have said? What's the substantive argument with regard to the objection cited or the basis cited by the district court? Well, we would have said that the factual determination was far from undisputed. You look at the determination, it says that the evidence shows past and isolated violations of the ADA and the evidence that the court was talking about was two memos that were in the record that effectively said yes, we've been refusing access to disabled people and we ought to do better in the future. That's all the memos said. There's no indication in the record that in fact Starline did do something to remediate those violations of the ADA that his employees were carrying out. And in fact, the record shows that there are violations postdating those memos. And this is the record that was actually developed in response to the arguments that were made. So you look at situations where plaintiffs try and board buses and they're told, well, you can board a Starline bus but you can't and you can board what we'll call a hop-on tour, but by the way, you can't actually hop off the tour. You'll just get driven around and get taken back to the same place you started, which is an ADA violation. There's a myriad of different explanations in the record of what the advance notice requirement is. If there even is one, it ranges from 24 hours to a week. And the district court says that it's a 24 to 48-hour policy. And even the district court's decision is inconsistent because it actually says that it's at least 48 hours in the document that it quotes. But I think under Norse that's immaterial because plaintiffs have the right to develop a record in response to an argument that's raised on summary judgment and they weren't given that opportunity. I note, too, that at the summary judgment stage that all inferences need to be made in favor of the nominating party, and that's certainly not the case based on this record that wasn't done. Moving on to the second issue, which is the scope of the lawsuit as the district court saw it. The first issue is that the district court didn't deal at all with plaintiffs' theory that Starling's training violated the ADA. So the district court actually acknowledged that that was part of the lawsuit. You see that in its order, and then it has a heading that says something about training. But there's no reason or explanation given as to why that claim related to noncompliant training under the ADA should be dismissed. And so that... So what remedy are you asking for? Assuming for the moment, without deciding, that the court were to accept the bulk of your arguments, what should an order or decision of this court say? We'd ask that the district court's decision be reversed, that it be remanded for further proceedings on the full scope of the ADA violations, not just the denial of access to get on board the buses, but also to remedy the ADA violations on board. And we've asked as well that the court grant summary judgment, which it can do because there's an undisputed record and plaintiffs move for summary judgment below. But failing that, we would at least like the issues remanded to the district court for their determination of all of the ADA violations. You have a proposed amended complaint. Is that what you want us to order be filed or an opportunity to, in light of the discussions and the briefing in this court, file either a revised amended complaint or what? I think that would be an appropriate result. As we've said in our papers, we don't actually believe that an amendment was required. We believe that Starline was on notice and we don't believe that the amendment was needed, but we certainly have no objection to an order that says that the amended complaint that we propose would be the operative pleading on which further proceedings in the district court would be based. Is there any need to further amend that complaint based on what's happened since then or would you be satisfied with the amended complaint that you sought to submit to the district court? We would be satisfied with the amended complaint. The proposed amendment was in December. Nothing happened in the interim between December and February when the court's order came out that we would change. I have one practical question. Understandably, your clients in the class can't necessarily, if their complaint is that they can't get on the buses, then it's hard for them to get on a bus and find any problems or obstacles that may exist once they get on the buses. That doesn't foreclose counsel or investigators from riding the buses and with knowledge of what would be likely interferences with access from fully developing that, would it? I have two responses to that. The first is that the court in Duran dealt with that very question and said that the court can actually develop evidence as to the unencountered barriers through discovery. The second answer to the question, which is specific to this case, is that what we're dealing here with is a fleet of vehicles. It's a fleet of vehicles that's used in rotation by Starline for its various tours. Getting on one bus, getting on a hop-on, hop-off tour bus, if I was to do that, I wouldn't be able to tell really anything about the scope of the ADA violations across the fleet. The only way to do that is to get access to Starline's fleet, which it controls, which is what we did during the course of discovery and what we were eventually allowed to do after the magistrate intervened and compelled that inspection. But there's no way to determine the ADA violations across an entire fleet of 150 vehicles. Well, that assumes the vehicles are materially different. If you get on a couple of hop-on, hop-off, you know, randomly selected and they are identically outfitted, then at least you have a basis to persuade the court you've been diligent in exercising your discovery, informal, you know, private discovery that you would do in any, just to meet Rule 11. So I'm trying to figure out exactly, I'm aware of Duran, but I'm also aware that if you go into a fleet, unless there's some basis, and there may well be here, but there's some basis to say, well, if you get on one BART car in San Francisco, you can't identify what most of the fleet, if not all of them, would be likely to be identically outfitted or an airplane or whatever. So when you're dealing with a fleet of vehicles, I'm not fully understanding why you say you have to go get on every one to identify all of the barriers. Well, you need to know which vehicles are used in which fleet because according to the regulatory scheme, there are different requirements, for example, for fixed route tours as opposed to demand responsive tours. It depends. So you also need to examine whether there's an equivalent level of service across the tour rather than... Well, I understand that. That's not a physical barrier. That's a policy barrier. I'm talking about physical barriers. And, well, I mean, the physical barriers, you could get on board a bus, a hop-on hop-off tour bus. I could do that. But then I wouldn't know when I then got on, if I tried to get on another bus that was used in the hop-on hop-off tour route, whether I'm getting on the same bus or an entirely different bus. Well, what difference does it make? You've gotten on one that clearly is part of the rotation, and the next one will give you a second sample. Well, because plaintiffs are seeking to remedy on behalf of a nationwide certified client. I understand that. That's what I'm trying to drive at. Oliver, for example, is saying that that was an individualized case. But when you're talking about a class, searching for some help on understanding the literally on the ground or on the vehicle barriers to understanding and identifying what are the And certainly it doesn't seem too much to ask to say if you have a fleet of vehicles or you have a service, the hop-on hop-off service, to have somebody with some expertise ride the sample and then say your allegations based on that. If you then move on to the actual discovery and records, then you'd be in a position to say, we want to file an amended complaint because we have exhausted, reasonably exhausted, what we could have done without formal discovery now. And we've identified a bunch of these problems. But the court would be in a lot better position to say, you've reasonably acted. But to say, well, we can't get on the buses, our clients can't get on the buses, therefore we can't say anything. We just have to talk generally, I think you're in a weaker position. Well, I do think that getting on board one bus and doing it on the regular course when they're rotating their fleet is not a particularly adequate substitute for formal discovery, which is what the RAN encourages and what this court encouraged plaintiffs to do to challenge unencountered barriers. State what you have left for rebuttal? Sure. Good morning, Your Honors. Every time I come here, I am envious of people who have guns and sexy events. I always have these boring things, and I apologize, I don't even have a sexy accent. But what I do have is a district court that's duly considered on a practical level. The issues that matter. The district court was given a complaint. The district court did not display in any way, shape, or form a bias towards these plaintiffs. In fact, over our objections, certified a class. Based on what they said, and what did they say? They said Starline, my client, does not allow any disabled people on board. And in fact, they used an analogy. They don't relegate them to the back of the bus. They don't let them on the bus. So the case started on that allegation. And my client was effectively the worst of the worst with a sign on the door saying you can't come in. And that's the case. We may not be the worst of the worst, but that doesn't necessarily tell us they're the best in full compliance, does it? I agree with you. So I took your line exactly, Your Honor, and called Plaintiff's Counsel. That's in the record. I can point the citation to you. And told them to amend, please. Tell us, because we need to know what kind of injunction you want. What do you want us to do? What is it that we're doing wrong? Repeatedly, they rejected. They did not want to amend. These are professional advocacy group plaintiffs. They could not identify an actual barrier that had been confronted to entry or use of the vehicles. The whole idea was to turn the policy procedures, the company inside out, upside down, to make grand changes rather than having been denied specific issues that they couldn't strap in, they couldn't whatever. There was none of that. None was ever alleged. What the district court did here, Your Honor, is not, did not grant Sponte a summary judgment that required any of those things. What the district court did, as every federal judge does on the bench that I have ever seen, checks jurisdiction along the way. Because it's the court's duty, as we know, to check to make sure that the jurisdiction resides properly before the court goes forward. Plaintiffs filed a motion for summary judgment. That says that the facts are concrete. It's at a stage of the case where there's really, according to them, no dispute. So the district court had undisputed facts. Starline filed. Was one of those disputed facts that Starline is in full compliance with the ADA? Was that an undisputed fact? Well, from our perspective, that we were in full compliance. But was that an undisputed fact? Is that something plaintiffs submitted as part of their summary judgment motion to say that, okay, this case is ripe for decision? I don't think it was one of plaintiffs' undisputed facts, was it? Well, I'm not sure if that's a conclusion to that. What I'm getting to is it struck me as an unusual standing decision. It really struck me as a decision that says, well, on the merits, there's no basis for injunctive relief, so you don't have standing because your case fails on the merits. Okay, but can we say that there's no basis for injunctive relief and could be no basis for injunctive relief based on the record as it exists? Well, you have to take the facts that the district court had in this case before the district court at the time. What the court had was a joint statement by the parties as to when any amendment would happen, and those schedules and times all came. So when this issue came before the district court, the complaint, according to the plaintiff, was good enough. In fact, today, they assert that it's still good enough. But they wanted to amend it. Well, that meant it wasn't good enough. So there's a lot of confusion on the part of the plaintiff. Argument in the alternative is not unheard of in this or any other court. Oh, I agree with you, but argument to bring a motion to amend after summary judgment has been filed has been looked upon with disfavor and suspicion by the court, saying that now you're trying to get around the summary judgment. So what we have here is a district court understanding issue, acted sui sponte, and the law is that the court has the authority and has the duty, in fact, to check jurisdiction, and the court did so. So this is not a case for summary judgment. I look at the court's order, and it focuses, for example, on memos, internal memos for Starline about how one of the undisputed in October 2, 2010, before this litigation was filed, Gwen Slaughter advised all Starline employees, quote, if anyone asks whether we have wheelchair accessible vans, the answer is yes, all caps, exclamation points. We do offer wheelchair accessible buses for our tours. All tours regarding wheelchair accessible vans must be reserved at least 40 hours in advance, blah, blah, blah, blah, blah. And there was a citation and a quotation from another memo. Well, that doesn't suggest to me that it's undisputed that there could not possibly be any problems out there, that people aren't being turned away. What I inferred from the memos cited by the district court is that Starline is working hard to make sure its employees know that this is the policy, because maybe that's not how they've been acting previously, or at least that's a permissible inference. Well, how can I say based on that there could be no ground for injunctive relief? Well, the reason is two points to make in response to your comment, Your Honor. One is, if you look at the citation to the fact here, the district court relied on the plaintiff's statement of facts. Yeah, well, I would. I'm a plaintiff. I offered this up as evidence saying, you know, Starline knows it's got a problem, too. Well, I understand. But then what is the problem? If Starline, if the allegation was that Starline does, Starline's policy is do not comply with the ADA, and there is undisputed evidence that Starline is attempting to comply with the ADA. Well, is that the same as undisputed evidence that Starline does comply with the ADA? I don't think that's the same thing. Well, we may differ on that, but I think if I give you the example that for Starline to have had a policy to say no wheelchair person can get on our buses, this memo would have never existed. So this lawsuit would have been pretty easy then, but the facts usually don't line up quite so simple. I understand. But the argument is if your policy is reflected as indicated here, your policy is to comply. Now, are you 100% successful at all times? Is anyone 100% successful? And does that make it actionable? So what would the injunction look like? I mean, injunctions have to be practical. In a write a better memo, do whatever. I mean, it has to be something specific. We have a memo. We know nothing apparently about actual compliance, actual performance. We have lots of directives. We get the Federal Rules of Appellate Procedure, and somehow we have a number of cases that stumble through our courts where parties are not in full compliance with the Federal Rules of Appellate Procedure. So I hear what you're saying in the sense of, well, maybe the company's trying, but sometimes there's a gap between trying and performance, and the district court appears to have just bridged that gap on its own. Well, I don't know if the district court went too far doing that. But what the district court did is it had a case that lived the life of a case, as we all have to follow the rules. So the case gets to its posture where there's time to make a decision. And if you look at what the district court did here, in fact, said, ah, you brought, you know, this much of a new information into this thing with an expert report and pictures and this, that, and the other thing, complaining about specific items. Now, your lawsuit wasn't about specific items. Your lawsuit, when you filed it, I certify the class. I may have to decertify it now. We're going to go back to square one. The district court said, well, that's a different lawsuit. And I think the questions from the bench was exactly that. You could have filed a new lawsuit. Nobody barred you. This lawsuit was about what it was. And it came to its conclusion correctly. Now, they're not barred. And why did they appeal instead of filing a new lawsuit? I mean, this is a perplexing thing. Sometimes, you know, the courts say, you're out cold. Here, the judge effectively prevented Starline from going and saying, well, this is a race judicata because the court said, these aren't part of this case. So how is it going to ever be a race judicata? So why would we say that? So your point is, your point is that you challenged the plaintiffs on specificity and they declined to amend the complaint within the time frame that they could have? Before Starline answered, during our joint meeting for the early meeting of counsel, before the joint report was given to the district court to set the deadline for amendment. I specifically did, Your Honor. Had they done any discovery at that point? They were in the process. They said their complaint was good enough. Their claim was, we don't let people on the bus. So why should they amend? Well, you're saying they should amend before you even did what then? Well, we said that you want an injunction. We looked at it practically. So you want an injunction. If the injunction is, please let people with disabilities on the bus, well, go look. They're getting on the bus. If your complaint is a specific barrier, something like, tell us. And they said, no, we're good enough. We're not going to do it. They wouldn't entertain the argument. So we ended up where we ended up, not because anybody manufactured it. From day one, I looked at the complaint and I couldn't tell what they wanted specifically. And what you heard today, I think, sheds light on your point clearly. They wanted every bus, every member of that fleet to comply with certain requirements, whether that particular bus was posing an actual barrier to any actual user. So this was a grand event. It wasn't someone went to get on the bus and couldn't because the ramp fell apart or whatever. So that's where the problem was for us. Going, well, what is it that you're telling us? And they're not telling us anything. By the time he came around and it was obvious the case was headed nowhere, they filed a motion to amend and added the expert report to get backfill and cover this gap. But I agree with the district court, not because I won, because I don't really, I'm not sure if I won because I want to be in another lawsuit. But this one's over for the reasons that the way it was started should have been started. And the point that they could have investigated, it happens all the time. Rule 11 requires it. Before I file a complaint, I have to investigate and figure out. Would not have been very difficult to have alleged things if they filed. As I understand, they filed a request for productions of documents and interrogatories were those directed at specific barriers somewhere. And what was your response? In fact, there were one instance where there were 100, I believe, give or take questions. And we went before a magistrate and the magistrate ordered the answer to one. Because 99 of those questions were not even answerable the way they were posed. So there's a lot of dirt in that regard been being thrown our way. The district court and the magistrate looked at everything and they set the timetable. In fact, the inspection of vehicles, that's so important. They didn't notice it until the time for amendment had passed. Many, many, many, many months after the case started. So we did what we could and wait a minute. I show the March 29th was the complaint was filed. That's correct. And the notice of inspection was August notice of inspection. Your honor was August 26. I timeline this last night to make sure I'm not blowing it. And the deadline to amend was August 9, 2011. So the first inspection notice, I believe, came out August 26th. Okay. I think if if the court would look at what the district court did. With the information that the district court had in its possession. I personally believe the trial judges are a lot closer to the actual smell of cases than when we get on appeal because we look at it differently. The court made the correct decision and terminated a lawsuit that was not meritorious to begin with. It was filed for for a lot of reasons that have nothing to do with necessarily the intent of the. Also, what you've indicated that the trial court left open the possibility of bringing a new lawsuit that could raise any of the issues that plaintiff's counsel has indicated wishes to raise. What is your understanding of the ratio of collateral estoppel effect of the judgment actually issued in this case on any such future litigation? Clearly, they cannot go back to court and say that Starline doesn't let anybody on board and is not the worst of the worst. And that's that's the only thing that's precluded in your view. In my view, what is precluded is what was alleged. And it was part of the case, which, according to the district judge, according to me, is what it was, what was in the complaint. And it brought brought it to an end when they submitted the amended complaint and had additional allegations that the court denied them and specifically authorized them to go file a separate lawsuit. I think one of your brethrens, if I made the argument, would probably not have a good time with me. So I think we see the district court's view as you can file another lawsuit if you actually have those other claims. And that would be on the training failure to train as well. It would be on the well, on the failure to train. I think the the allegation was made, but the evidence itself, I think what they try to amend was on the physical barriers. Well, I understand, but what you're saying is that it would be race judicata that they that you didn't fail to train. I would say it would be more issue of estoppel if there are specific specific issues of training we're talking about. In other words, if the if the answer if the issue was that Starline tells its employees don't allow a qualified persons on board and that's the issue as a wholesale issue. But if they have a specific one saying ADA requires that you hold a training session every 90 days or 120 days, I don't think that was litigated. So I see the training issue as more of a collateral estoppel issue because of the specificity of what is involved. And I just like to say something in closing about my client that they're not the worst of the worst. And in fact, in their industry, they're the best of the best. They have gone out of their way and everyone has said they're one of the largest tour operators. They do comply and try. And the evidence shows it. And at best, under the amendment procedures, that the ramp is twenty nine and a half inches rather than 30. So this is not a case where these folks were actually denied service. And I think district court rightly found that if they believe in good faith, they have another case. I think the road was open and they could have done it. Then why file this appeal and put us through all of this? I submit. Thank you. Very little time I have left. I just want to make a very two quick points. The first is in response to Judge Fisher's questions. We actually did write the buses before this complaint was filed. We didn't find any lifts or ramps on the buses that were written. But even if we had, you can't determine whether you can't measure the lifts and ramps without someone there to pull them out or operate them. So I couldn't have gone on or an expert couldn't have gone on board and just measured while riding the buses around Hollywood. The second point just is on the challenge to the specificity of the complaint that Starline said they made and that we declined to amend. All of that was done before we'd gotten any meaningful discovery about the buses. The period before August when we did the inspection, as Judge Fisher recognized, we were propounding RFPs, interrogatories, aimed at getting information about the buses in order to conduct a meaningful inspection. We noticed the inspection. It took three months or more and the magistrate's intervention before we could actually go and inspect the fleet. When we did that and as soon as we got the information, we sought leave to amend. That's the state of the record. Thank you. Thank you, counsel, for the helpful arguments. The case just argued is submitted.
judges: Singleton, Fisher, Clifton